IN UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NINA YUN CHEN PREMEZZI, <br><br> Plaintiff, <br><br> v. <br><br> BLYTHEDALE CHILDREN'S HOSPITAL, <br><br> Defendant. | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Nina Yun Chen Premezzi, represented by Jafri Law Firm, and brings this complaint against Defendant Blythedale Children's Hospital for discrimination and wrongful termination on the basis of race, national origin, age, disability and opposed discrimination/retalitation.

### NATURE OF THE CLAIMS

1. This is an action for monetary damages to redress Defendant's unlawful discrimination and wrongful termination against Plaintiff on the basis of race, national origin, age, disability and opposed discrimination/retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") and Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA").

2. Plaintiff Nina Premezzi is a Chinese American licensed pharmacist. Plaintiff Premezzi was formally employed as a Staff Pharmacist for Defendant Blythedale Children's Hospital beginning on or about May 18, 2015 until her termination on December 14, 2020.

3. Plaintiff Premezzi was the only Chinese-American employee at Blythedale Children's Hospital and notably replaced by a white male pharmacist when she was wrongfully terminated by Defendant Blythedale Children's Hospital.

4. During her employment with Defendant Blythedale Children's Hospital, Plaintiff endured disparate treatment and experienced workplace discrimination from supervisors and members of the Blythedale Children's Hospital on the basis of her race, national origin, age and disability, while said discriminatory behavior was protected by higher management.

5. Plaintiff Premezzi was denied the same terms and conditions of employment available to employees who are of a different national origin and/or race, including, but not limited to, subjecting her to disparate working conditions during a global pandemic that led to a rise in violence and phobia toward Asian Americans.

6. Plaintiff Premezzi was specifically discriminated against by Pharmacy Director, Pradeepan Ananthasingam employed by Defendant Blythedale Children's Hospital. Plaintiff was falsely accused of errors and consistently held to a different professional standard than her colleagues, due to her national origin.

7. During the course of Plaintiff Premezzi's employment, she complained multiple times via e-mail to Vice President John Flanagan and Human Resources director Cindy De Muro regarding Pradeepan's discriminatory behavior. However, nothing was done to reprimand Pradeepan nor resolve the discriminatory conduct and ultimately, Plaintiff's complaints were dismissed.

8. Defendant retaliated against Plaintiff for complaining by ultimately terminating her in a manner which foreseeably would be distressing and would destroy all of her prospects for subsequent employment as a pharmacist.

9. Defendant Blythedale Children's Hospital's discriminatory and tortious conduct in employing such individuals with such a pattern of harassment against Plaintiff shows a knowing,

reckless and/or willful and malicious disregard for Plaintiff's rights. Defendant's unlawful conduct has caused and continues to cause Plaintiff to suffer economic and other damages.

## ADMINISTRATIVE PROCEDURES

10. Plaintiff Premezzi has filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue on April 8, 2022. Plaintiff has timely filed her lawsuit pursuant to the Right to Sue letter received from the EEOC.

11. Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"). The court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. Section 1367(a).

13. Venue is proper in this district pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

14. Plaintiff Nina Premezzi is a licensed pharmacist of Chinese origin. Plaintiff Premezzi was formally employed as a Staff Pharmacist for Defendant Blythedale Children's Hospital beginning on or about May 18, 2015 until her termination on December 14, 2020.

15. Defendant Blythedale Children's Hospital is an independent, not-for-profit hospital that provides specialized health care to children with severe and complex medical issues. Blythedale maintains a Pharmacy Department, which is staffed by 11 New York State licensed pharmacists,

director of pharmacy, Pradeepan Anathasigam and 7 pharmacy technicians.

16. Defendant is incorporated in Valhalla, New York at 95 Bradhurst Avenue, NY 10595.

## FACTUAL ALLEGATIONS

17. Plaintiff Premezzi was formerly employed by Defendant Blythedale Children's Hospital beginning on May 18, 2015 until her termination by Defendant on December 14, 2020.

18. Plaintiff Premezzi was employed by Defendant Blythedale Children's Hospital as a Staff Pharmacist.

19. Plaintiff Premezzi is an experienced hospital pharmacist. Prior to her employment at Blythedale Children's Hospital she was a night-shift pharmacist at Cohen Children's Medical Center in Queens, New York from August 2014 to April, 2015 before she took the offer from Blythedale Children's Hospital due to a better work schedule. Prior to that, Plaintiff was a pediatric pharmacist for 7 years in Florida. In all of her professional years as a pharmacist, Plaintiff never received a complaint. Plaintiff maintained five years of excellent job performance at Blythedale Children's Hospital under the supervision of the former pharmacy director.

20. False allegations were made against Plaintiff Premezzi that alleged her contaminating medication. However, a needle along with the syringe was properly inserted into the IV bag in the sterile hood and left in the IV bag, an intentional technique to maintain the sterility when she showed the correct volume in the syringe to the three other pharmacists who were present. This technique did not break the sterility of the content. If the medication was contaminated as falsely claimed, the IV bag would be more likely to be contaminated in the regular air when the nurse originally spiked the bag. Furthermore, the other three pharmacists would have taken action or stopped the IV bag from reaching the patient.

21. Plaintiff Premezzi was unaware of any hospital policy update and did not receive any updated training.

22. In addition, Plaintiff Premezzi has a degree in surgical technology and was certified and worked as a surgical technician at Mercy Health System Operating Room Unit in Janesville, Wisconsin from 1999 to 2005 before she received her doctorate degree in pharmacy from University of Wisconsin School of Pharmacy. Plaintiff has been a hospital pharmacist since 2005 making IV sterile preparations in Wisconsin, Florida and New York. Plaintiff Premezzi's concept and technique of sterility are undeniably trusted with 20+ years of zero incident.

23. Additionally, Plaintiff Premezzi is aware that the assistant director, Mirella, routinely adjusted sterile syringes outside of the clean room to remove any bubbles, which was acceptable by Pradeepan.

24. Defendant Blythedale and Prandeepan failed to provide monthly medication error reports, write ups and counseling of others who made errors further proves that a different standard was consistently applied to Plaintiff.

25. In April of 2020, Plaintiff Premezzi contracted COVID-19, a global pandemic that led to a rise in violence and phobia toward Asian Americans.

26. Despite completing the COVID-19 quarantine, Plaintiff Premezzi was forced to work by herself in the pharmacy and was the only pharmacist who worked three times in the pharmacy, completing 39 hours for the week. Two of the other pharmacists did not work in the pharmacy at all. One pharmacist worked twice in the pharmacy, completing 20.5 hours, one pharmacist worked once in the pharmacy, completing 13 hours and another pharmacist worked once in the pharmacy, completing 7.5 hours.

27. The first day Plaintiff returned to work after quarantine was on April 28, 2020. Pradeepan remained in his office and did not offer Plaintiff Premezzi a break, despite her being the sole pharmacist in the pharmacy. After working non-stop from 8 am to 4 pm, Plaintiff called Pradeepan's office, requesting him to cover for her so she may take a break to get food and fresh

air, considering that she was wearing a mask for the entire day without any chance to remove it. Pradeepan stated that he was "not obligated to give a break per labor laws…" His tone was extremely abusive, threatening and demeaning.

28. Defendant alleged that Plaintiff Premezzi made four errors during January 10, 2020 through June 9, 2020. However, one of those alleged incidents from May 7, 2020 was made by two pharmacists working from home before the medication reached Plaintiff, who was only responsible for labeling the product with a matching patient's name. The other two pharmacists made the error but did not get any disciplinary action. Yet Plaintiff, due to her national origin and race, was reprimanded for the mistake she did not make.

29. An alleged incident on June 9, 2020 was in fact, not an error. The label of a STAT Alteplase order did not print due to a program defect. Plaintiff acted in a manner which any pharmacist would routinely do, and changed the dose from 0.5 mg to 0 mg in the dose field and type the dose = 0.5 mg = 0.5 ml in the dose instruction field. The order was entered at 10:24 am. Plaintiff finished editing the order at 10:28 am, then proceeded to call, text and email both the pharmacy and Pradeepan immediately to inform them of the STAT order. Plaintiff did not receive a response. Next, Plaintiff emailed the HR director, Cindy De Muro at 10:30 am to document her efforts to communicate with the pharmacy regarding the STAT order.

30. The alleged incident on March 11, 2020 accused Plaintiff Premezzi of entering an incorrect number of syringes and packaging syringes in a bag with incorrect expiration dates. However, this was a part of the narcotic pharmacist's responsibility and duties. Plaintiff was trying to assist the narcotic pharmacist but was misinformed by the technician who packaged the syringes. Thus, there was no error in the total inventory and this was not patient-care related.

31. Further, the pharmacy, as a whole, made more than one error during the January 10, 2020-June 9, 2020 period. However, Pradeepan refused to disclose the total number of errors the

pharmacy made during the period, who made them and whether the same disciplinary action was taken, as a further attempt to alienate and demonize Plaintiff.

32. During the course of Plaintiff Premezzi's employment, she complained multiple times via e-mail to Vice President John Flanagan and Human Resources director Cindy De Muro regarding Pradeepan's discriminatory behavior. Specifically, Plaintiff complained about Pradeepan's harassing conduct on May 19, 2020 and August 10, 2020.

33. However, nothing was done to reprimand Pradeepan nor resolve the discriminatory conduct and Plaintiff's complaints were dismissed. Plaintiff sent an email on May 19, 2020 and August 10, 2020.

34. In May and August of 2019, Plaintiff Premezzi was rear ended in an automobile accident. The August 2019 incident resulted in an ongoing back injury. Furthermore, Plaintiff's husband had brain surgery in February 2020 as a result of Hydrocephalus. Plaintiff took an extended leave from August to November 2020 to care for her husband. However, when she returned from her medical leave, she was terminated. Plaintiff was fired and escorted out of the Blythedale building during her 4 pm dinner break on December 14, 2020. Plaintiff's husband, who is now deceased, was covered under the Blythedale group health insurance. All health insurances start coverage on the first of the month and as a result of her sudden termination in the middle of the month and before Christmas, Plaintiff's husband was forced to switch to Medicare Part B enrollment, which would take over two months and requires Blythedale HR to complete the CMS L564 form. Plaintiff was not provided any termination paper or any paperwork that she could submit to start her elderly husband's Medicare Part B enrollment.

35. On December 16, 2020, Plaintiff Premezzi emailed HR to request employment information for Medicare. She did not receive a response from HR, further portraying the harbored animosity that Defendant Blythedale held against Plaintiff.

36. As a result of no response from the HR department at Blythedale hospital to complete the CMS L564 form and no termination paperwork, Plaintiff Premezzi emailed HR along with VP, John Folanagan a Paid Family Leave Complaint on December 18, 2020. HR representative Cindy then responded on December 19, 2020. Plaintiff was then able to use her response, page 3 of the PFL-DC-119 form, to complete the CMS L564 form for Medicare Part B enrollment for Plaintiff's late husband.

37. It should be noted that Plaintiff did not receive any COBRA paperwork until January 21, 2020.

38. Once Plaintiff Premezzi was terminated, she immediately started seeking new work. Plaintiff received a call from Defendant Blythedale Children's Hospital, threatening that if the Complaint was not withdrawn, opposing counsel would smear Plaintiff in the public record, making it extremely difficult for her to find new work. Thus, displaying another form of racially motivated harassment.

39. Defendant, and its employees, harassed and abused Plaintiff by their workplace discrimination on the basis of Plaintiff's race, national origin, disability and opposed discrimination/retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.  ("Title VII") and Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"). Thus putting  Plaintiff in disciplinary jeopardy, as well as allowing an environment where supervisors could regularly harass Plaintiff on the job and even falsely accusing Plaintiff of intentional medical errors in order to bring about Plaintiff's termination and upholding this termination.

40. As a result of Defendant's actions, Plaintiff has suffered monetary and/or economic damages, including, but not limited to, the loss of past and future income, compensation and other benefits.

41. Defendant's discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's civil rights.

## FIRST CAUSE OF ACTION

(Discrimination and Harassment in Violation of the Civil Rights Act)

42. Plaintiff hereby repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

43. Title VII of the Civil Rights Act states that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

44. By the actions described above, among others, Defendant has discriminated against Plaintiff on the basis of her race and national origin by denying her the same terms and conditions of employment available to employees who are non-Chinese American, including, but not limited to, subjecting them to disparate working conditions, falsifying allegations, reprimanding the only Chinese American for the mistakes of others and denying them terms and conditions of employment equal to that of employees who are non-Chinese American.

45. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which they are entitled to an award of damages.

46. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act, Plaintiff has suffered, and continues to suffer severe

mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

47. Defendant's unlawful and discriminatory actions constitute willful violations of Title VII of the Civil Rights Act for which Plaintiff is entitled to an award of punitive damages.

SECOND CAUSE OF ACTION

(Discrimination and Harassment in Violation of the Age Discrimination in Employment Act)

48. Plaintiff hereby repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

49. The Age Discrimination in Employment Act states "it shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

50. Defendant Blythedale Children's Hospital violated Plaintiff Premezzi's civil rights pursuant to 29 U.S.C. § 623(a)(1) when they allowed younger employees with lesser professional experience and poor work performance, to receive better working conditions than Plaintiff along with being held to a different professional standard. Furthermore, Plaintiff was discriminated against as a result of age association of her now deceased husband, who is notably older than her.

51. By the actions described above, among others, Defendant has discriminated against Plaintiff on the basis of her age and association through her husband, by denying her the same terms and conditions of employment available to employees who are younger, including, but not limited to, subjecting her to disparate working conditions where she was not provided any breaks and denying her terms and conditions of employment equal to that of employees who are younger.

52. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Age Discrimination in Employment Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

53. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Age Discrimination in Employment Act, Plaintiff has suffered, and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

54. Defendant's unlawful and discriminatory actions constitute willful violations of the Age Discrimination in Employment Act for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

(Discrimination and Harassment in Violation of the NYSHRL)

55. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

56. Defendant has discriminated against Plaintiff on the basis of her age, national origin and disability in violation of the NYSHRL by denying the respective classes the same terms and conditions of employment available to employees who are younger or of a different national origin, including, but not limited to, subjecting them to disparate working conditions and ultimately terminating them for unlawful purposes.

57. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of damages.

58. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

59. Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

FOURTH CAUSE OF ACTION

(Discrimination and Harassment in Violation of the NYCHRL)

60. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

61. Defendant has discriminated against Plaintiff on the basis of her race, national origin, and age in violation of the NYCHRL by denying her the same terms and conditions of employment available to employees who are younger, of a different national origin and/or race including, but not limited to, subjecting them to disparate working conditions and compensation.

62. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

63. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of damages.

64. Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the state of New York;

B. An injunction and order permanently restraining Defendant from engaging in or tolerating such unlawful conduct from its employees;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his humiliation, embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering.

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest;

F. An award of punitive damages;

G. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Respectfully submitted,

JAFRI LAW FIRM

Dated: May 19, 2022 By:   By: /s/ Farva Jafri

Farva Jafri
50 Evergreen Row
Armonk, NY 10504
farva@jafrilawfirm.com
t: (800)593-7491
f: (224)228-6721
*Counsel for Plaintiff*